**William H. LOW**

v.

**HASBRO, INC., and John Buntel.**

Civ. A. No. 91–0092–T.

United States District Court,
D. Rhode Island.

April 2, 1993.

John H. Blish, Michael DiBiase, Blish & Cavanagh, Providence, RI, for plaintiff.

James M. Paulson, Keith Muntyan, Benjamin Smith, Morgan, Brown & Joy, Boston, MA, John A. Tarantino, Providence, RI, for defendants.

### MEMORANDUM AND ORDER

TORRES, District Judge.

This is an age discrimination suit brought pursuant to the Age Discrimination and Employment Act ("ADEA") 29 U.S.C. §§ 621 *et seq.* It is presently before the Court for consideration of John Buntel's motion for summary judgment on the ground that the ADEA does not impose personal liability on individuals who are not "employers." For the reasons hereinafter stated, Buntel's motion for summary judgment is granted.

### FACTS

In September, 1985, Hasbro, Inc. ("Hasbro"), a toy manufacturer, hired William Low as a manager in its preschool engineering department. In 1987, Low was transferred to a similar position in the product design engineering department and reported directly to John Buntel, who was, then, the department's associate vice president. In September 1989, Hasbro reorganized the product design engineering department, and Low began reporting to James A. Connors, a senior

director. Conners, in turn, reported to Buntel.

On June 7, 1990, Hasbro terminated Low's employment citing alleged deficiencies in his performance. The termination was recommended by Connors and approved by Buntel. Low claims that he was fired because of his age (53) and seeks reinstatement to his former position, back pay, restoration of lost benefits, an injunction against any further acts ·of age discrimination and attorneys' fees.

## DISCUSSION

The ADEA prohibits an "employer" from taking adverse employment action against an employee because of the employee's age. 29 U.S.C. § 623(a)(1). The statute defines an "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees ... [and] any agent of such person." 29 U.S.C. § 630(b).

■ Generally speaking, the term "employer" refers to one who utilizes the services of others and pays them wages or salaries. See Black's Law Dictionary, 515 (6th ed. 1990). In this case, Buntel clearly does not fit within that definition. Low rendered his services to Hasbro, and it was Hasbro that paid his salary. Consequently, Buntel can be deemed Low's "employer" only if Buntel is Hasbro's "agent" within the meaning of § 630(b).

■ The ADEA, itself, provides no guidance as to whether or under what circumstances a supervisory employee may be considered an "employer." However, the legislative history indicates that by incorporating the term "any agent" into the definition of "employer" Congress intended only to make an employer liable for the acts of his agents and did not intend to treat supervisory employees as "employers." As the court noted in Friend v. Union Dime Savings Bank, 24 Fair Empl.Prac.Cas. (BNA) 1307, 1980 WL 227 (S.D.N.Y.1980), the ADEA and its definitional provisions were modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., which was in turn based on the language of the National Labor Relations Act, 29 U.S.C. § 141 et seq. ("NLRA"). Id.,

at 1309. Prior to 1947, the NLRA defined "employer" as "any person acting in the interest of an employer." In 1947, that language was changed to "any person acting as an agent of the employer." H.R. 3020, 89th Cong., 1st Sess. 11 (1947); 29 U.S.C. § 152(2). As the Friend court stated:

> The purpose of the statutory change was to avoid employer responsibility for the misconduct of individuals who were remotely connected with the employer. From the legislative history it is clear that when Congress included 'any agent' in the NLRA it was an attempt to limit the employer's liability rather than to grant a new cause of action against all agents or employees of an employer.

Friend, 24 Fair Empl.Prac.Cas. (BNA) at 1307 (citations omitted).

■ Of course, there may be circumstances where a supervisory employee may be deemed an "employer" because he or she has an ownership interest in the enterprise. See, e.g., Marshall v. Arlene Knitwear, Inc., 454 F.Supp. 715 (E.D.N.Y.1978). Similarly, there may be occasions where a supervisory employee may be individually liable because he or she engages in discriminatory practices that are clearly unrelated to performance of the supervisory employee's duties. For example, a supervisor who sexually harasses a subordinate might be personally liable on the ground that, by engaging in such conduct, the supervisor was acting personally and not on behalf of the employer. Cf. Henson v. City of Dundee, 682 F.2d 897, 910 (11th Cir.1982). However, neither of those circumstances is present in this case. There is no allegation that Buntel was an owner of Hasbro. Furthermore, to the extent that he may have approved Low's termination, he was acting as Hasbro's representative and not in his individual capacity.

The conclusion that no action can be maintained against Buntel, individually, is buttressed by the fact that the relief claimed, in this case, is available only from Hasbro. Only Hasbro can reinstate Low, give him back pay, or restore his lost benefits. See 29 U.S.C. §§ 626(b), 216(b). Therefore, there is no purpose to be served by making Buntel, individually, a party defendant. See

*Williams v. Hevi–Duty Electric Co.,* 668 F.Supp. 1062, 1070 (M.D.Tenn.1986), *rev'd on other grounds,* 819 F.2d 620 (6th Cir.), *cert. denied,* 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987) (construing parallel provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e).

### *Conclusion*

For all the reasons noted above, Buntel's motion for summary judgement is hereby granted.

IT IS SO ORDERED.